O P I N I O N
Plaintiff-appellant Titus L. Jones appeals from a summary judgment rendered against him. He claims defendant-appellee Security National Bank Trust Company's ("Bank") service of process was insufficient, so that the trial court never had personal jurisdiction over him. Jones also contends the lower court erred by denying his request for a ten-month continuance to obtain additional discovery prior to its grant of summary judgment to the Bank. Finally, Jones argues that the court improperly rendered summary judgment and violated his constitutional rights and certain statutory civil rights by denying him a jury trial.
We conclude the lower court had personal jurisdiction over Jones. Jones failed to preserve the issue of whether the court erred by denying his request for a continuance to conduct additional discovery prior to its entry of summary judgment, since he did not request a continuance pursuant to Civ.R. 56(F). Finally, summary judgment was properly granted, and neither Jones' constitutional rights nor his rights under the Civil Rights Acts of 1866 and 1871 were violated by his failure to receive a trial by jury, as a consequence of the summary judgment rendered against him. Accordingly, the judgment of the trial court is Affirmed.
IJones obtained a loan from the Bank for $9,796.27 to purchase a car in August 1996, which he secured with a mortgage on his home, located at 411 West Clark Street, Springfield, Ohio. As additional collateral, the promissory note Jones executed granted the Bank "a security interest in, and pledge[d] and assign[ed] to [the Bank] all of [Jones'] rights,title, and interest, in all monies, instruments, savings, checking and other deposit accounts of [Jones] . . ., that are now or in the future in [the Bank's] custody or control." (Emphasis added.)
The Bank brought this action to obtain a judgment and to foreclose on the property after Jones' alleged default on the loan. Jones moved to dismiss the action, based, in part, upon an alleged lack of service. In the alternative, Jones requested a ten-month extension of time to conduct additional discovery, because he was incarcerated and unable to gather evidence for his defense. The trial court overruled his motion to dismiss and denied his request for an extension. Jones then answered, denying that he had defaulted on the loan, and asserted a counterclaim alleging that the Bank, without permission, removed $6,000 from his savings account, which was more than the outstanding loan balance, and alleging also that the homestead exemption precluded judgment in the Bank's favor.
The Bank moved for summary judgment on its claim. Jones filed a memorandum in opposition, but failed either to request a continuance pursuant to Civ. R. 56(F), or otherwise argue that the Bank's inadequate response to his discovery requests had hindered him in his response to the Bank's motion. The Bank did not reply. Summary judgment was rendered in favor of the Bank. From the summary judgment rendered against him, Jones appeals.
 IIThe Bank has not favored us with an appellate brief, so this appeal must be determined solely upon Jones' brief and the record on appeal.
We begin our analysis by addressing Jones' third assignment of error, since it raises a question regarding our jurisdiction to hear this appeal. This assignment of error states:
 THE COURT ERRED IN NOT ANSWERING DEFENDANTS [sic] COUNTERCLAIM
In a case involving multiple claims, an order is not final and appealable, and the appellate court has no jurisdiction to hear the appeal, unless the requirements of both R.C. 2505.02 and Civ.R. 54(B) are met.[1] If Jones' counterclaim remains pending, then we have no jurisdiction to hear this appeal, since the order from which this appeal is taken would not be a final appealable order, because the case involves multiple claims, one by the Bank and a counterclaim by Jones, and the trial court did not include Civ.R. 54(B) language indicating there is no just cause for delay to appeal the entry granting the Bank summary judgment. Thus, we initially examine the trial court's treatment of Jones' counterclaim to determine if the court's failure to include Civ.R. 54(B) language deprives us of jurisdiction to determine this action.
R.C. 2505.02 defines a "final order" as an order that: (1) affects a substantial right and effectively determines the action and prevents a judgment; (2) affects a substantial right and is entered in a special proceeding or upon summary application after final judgment; or (3) vacates or sets aside a judgment or grants a new trial.
Civ.R. 54(B) states:
 When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions . . . the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims . . . shall not terminate the action as to any of the claims . . . and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims . . . .
The entry rendering summary judgment is a final order under R.C. 2505.02
because it substantially affects Jones' rights, determines the action, and prevents a judgment in his favor. Since this case involves multiple claims, however, Civ.R. 54(B) applies. Because of the nature of Jones' counterclaim and the court's resolution of the case, we conclude that the court's failure to specifically address Jones' claim for relief, and its failure to include a determination that there is no just reason for delay, does not deprive us of jurisdiction to hear this appeal.[2]
The trial court resolved this case by rendering summary judgment to the Bank on its claim for relief, while implicitly rejecting Jones' counterclaim. If the court had reserved judgment on Jones' claim for relief, then it could not have awarded summary judgment to the Bank on its claim, because the loan would have been paid in full. Therefore, we conclude that trial court necessarily rejected Jones' counterclaim implicitly. Jones' counterclaim having been implicitly adjudicated by the summary judgment rendered against him upon the Bank's claim, there are no claims remaining pending for adjudication, and Civ. R. 54(B) does not require a certification of no just reason for delay.
Although it would have been better practice for the trial court to have addressed Jones' counterclaim expressly, any procedural error in that regard is harmless because the trial court properly rendered summary judgment in favor of the Bank upon its claim, and, that claim being logically inconsistent with Jones' counterclaim, it follows that the Bank was entitled to summary judgment, as a matter of law, upon Jones' counterclaim.
Jones' third assignment of error is overruled.
 III
Jones' first "fourth" assignment of error (he has set forth two "fourth" assignments of error) states:
 THE COURT ERRED IN NOT ORDERING THE CLARK COUNTY CLERK OF COURTS TO ISSUE A COMPLETE COPY OF THE COMPLAINT AND SUMMONS
Jones' pro se argument in support of this assignment of error is not clear. He appears to question the sufficiency of the Bank's service of process on or upon him. Taken to its logical conclusion, Jones' argument is that the court lacked personal jurisdiction over him because of insufficiency of service of process, rendering the judgment against him voidable.
We disagree. Service of process is presumed when the Ohio Rules of Civil Procedure are followed unless the defendant rebuts the presumption by sufficient evidence.[3] Civ.R. 4(B) requires that a copy of the complaint be attached to the summons, and Civ.R. 4.1 provides that service by certified mail is evidenced by a return receipt signed by any authorized person under the rules. Certified mail is effective upon delivery and does not require actual service upon the party receiving the notice so long as the notice is reasonably calculated to reach the individual being served.[4] Under Civ.R. 4.2, service of process is presumed sufficient upon an incarcerated person when the envelope containing the summons and complaint is received by an authorized jail official.[5]
The record reflects that a copy of the summons and complaint was sent by certified mail to Jones in care of the Dayton Correctional Institute, and service was evidenced by a signed return receipt. Jones does not claim that he did not receive a copy of the complaint or that a prison official did not sign and receive the envelope containing the summons and complaint. Instead, he argues that he may have received an incomplete copy of the complaint. This allegation does not rebut the presumption of proper service. Even if Jones had received a copy of the wrong complaint, the summons put him on notice that he was being sued and with reasonable diligence he could have ascertained the facts regarding the Bank's allegations.[6] Thus, we conclude that the trial court properly denied Jones' motion to dismiss, and the judgment is valid since the court did not lack personal jurisdiction over him.
Jones' fourth assignment of error is overruled.
 IV
Jones' first, second, and fifth assignments of error are interrelated and are addressed together because they relate to the trial court's denial of Jones' request for a ten-month continuance to conduct additional discovery prior to the court's ruling on the Bank's motion for summary judgment.
In his first assignment of error, Jones argues:
 THE COURT ERRED IN OVERULING [sic] DEFENDANTS [sic] MOTION FOR CONTINUANCE
In his second assignment of error, he claims:
 THE COURT ERRED IN OVERRULING DEFENDANTS [sic] MOTION FOR DISCOVERY
Finally, Jones' fifth assignment of error contends:
 THE JUDGE ABUSED HIS DISCRETION IN GRANTING SUMMARY JUDGEMENT [sic] ON THE INFORMATION WHEN HE KNOW [sic] THAT THE DEFENDANT HAD NO CONTROL OVER HIS CIRCUMSTANCES
Essentially, Jones argues the trial court abused its discretion by denying his request for a continuance to conduct discovery. He claims he was prejudiced by this decision since he was unable to obtain evidence for his defense prior to the court's entry of summary judgment.
We note at the outset that pro se litigants are held to the same standards as are those represented by an attorney.[7] We have repeatedly said that "`[p]arties who find themselves in the position of having to respond to a motion for summary judgment before adequate discovery has been completed must seek their remedy through Civ.R. 56(F).' A party who fails to seek such relief does not preserve his right to challenge the adequacy of discovery upon appeal."[8] While Jones initially filed a request for an extension of time to conduct further discovery, he failed to renew this request, produced no affidavit showing how a continuance would assist him in opposing the Bank's motion for summary judgment, or even mentioned his desire to obtain additional evidence in his memorandum in opposition to the Bank's motion for summary judgment.
Motions for summary judgment frequently focus the trial court's attention upon issues of fact and law that are much narrower than all of the issues of fact and law raised in the pleadings. A motion for summary judgment for a defendant may, for example, be based solely upon the alleged running of the statute of limitations, or upon the absence of one essential element of a cause of action involving many other essential elements. For this reason, the orderly disposition of motions for summary judgment requires that the trial court's attention be focused upon those materials in the record upon which the parties intend to rely, in support of, or in opposition to, the motion. Judicial economy is not served if a trial judge is required to examine every document that has been filed in the case to see if it has any potential application to the motion for summary judgment, since the filings in the case may be voluminous, with only a few having any application to the issues of fact and law material to the motion.
Accordingly, Jones was not entitled to stand upon his previously filed motion for a continuance to permit discovery, which, for all the trial court might have known, could have concerned discovery relating to matters not material to the issues of fact and law relating to the motion for summary judgment. Jones was required to apply under Civ. R. 56(F) for a continuance if he believed that he needed a continuance to develop the evidentiary materials he needed to respond to the motion for summary judgment. By responding to the motion for summary judgment without applying for a continuance pursuant to Civ. R. 56(F), or even referring to his pending motion for a continuance as relating to discovery of evidence material to the motion for summary judgment, Jones led the trial court to conclude that the motion for summary judgment was ripe for adjudication.
While the result may seem harsh, Jones chose to represent himself in this matter and will be held to the same standards applicable to parties represented by counsel. Jones' first, second, and fifth assignments of error are overruled.
 V
Jones' second "fourth" assignment of error and his eighth assignment of error are interrelated to the court's alleged error in granting summary judgment and also will be addressed together.
In Jones' second "fourth" assignment of error, he contends:
 HOMESTEAD EXEMPTION, OHIO LAW ALLOWS THE DEBTOR TO MAINTAIN THERE [sic] DWELLING IN CASE [sic] FORECLOSURE
His eighth assignment of error provides:
 THERE IS A GREAT CONFLICT OF INTEREST [sic] STATE WANTS TO ENFORCE SLAVERY TAKING OF WAGES OR EARNING FOR NO REASON
Jones raises two arguments regarding the propriety of the trial court's decision to grant summary judgment to the Bank. On the one hand, he argues that the homestead exemption precluded the trial court from granting summary judgment. On the other hand, he seems to argue that the Bank, as the moving party, failed to make and support its motion as required by Civ.R. 56(C). He is apparently arguing that the summary judgment rendered against him is an error tantamount to slavery, since it requires Jones to pay a debt that he no longer owes.
Our standard of review when analyzing a summary judgment is de novo.[9]
Under Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate no genuine issue of material fact exists on the essential elements of the nonmoving party's claims.[10] Once the moving party meets that burden, the nonmoving party has a reciprocal burden of showing that a genuine issue of material fact exists to prevent summary judgment.[11]
As to Jones' first claim, the homestead exemption does not preclude summary judgment. While the homestead exemption of R.C. 2329.66(A)(1)(b) is generally applicable to executions against real property in state court, this exemption does not prevent judgment and foreclosure on a mortgage attached to a residential premises.[12] Here, the homestead exemption will not save Jones from the Bank's foreclosure.
As to Jones' second claim that genuine issues of material fact exist to prevent summary judgment to the Bank, we disagree. The Bank met its initial burden under Civ.R. 56 when it moved for summary judgment on Jones' alleged default and supported its motion with a copy of the note, the mortgage evidencing the Bank's lien on the property, and an affidavit of its credit adjustment manager Darlene Donaldson. Although the Bank did not specifically move for summary judgment on Jones' counterclaim, the Bank's motion for summary judgment on its claim was logically antithetical to Jones' counterclaim, which alleged that the loan had been repaid in full, and therefore implicitly encompassed Jones' counterclaim within its scope.
Section 5 of the note specifically provides that a borrower is in default if he fails to make a payment to the Bank when it is due, and section 6 allows the Bank to declare the entire balance due and sell or otherwise dispose of any collateral. Under this section the Bank was also allowed to set off the amount due on the note against any money Jones maintained in a savings account with the Bank. Donaldson avers in her affidavit that she supervised Jones' loan and the records relating to it, and these records demonstrate that Jones failed to make monthly payments when they were due. Thus, under the terms of the note, Jones was in default and the Bank was allowed to declare the loan due and sell the property or set off against his savings account for the amount due, as reflected in Donaldson's affidavit. If, as Donaldson averred in her affidavit, Jones owed a balance on the loan, then his counterclaim was necessarily without merit, since it was predicated upon his allegation that the loan had been paid in full.
Once the Bank made its initial showing, the burden shifted to Jones to demonstrate the existence of a genuine issue of fact to prevent summary judgment. He attempted to meet this burden by attacking Donaldson's affidavit and raising issues relating to his counterclaim to show that the loan had been paid in full.
According to Jones, Donaldson's affidavit created a genuine issue of material fact regarding whether he still owed money to the Bank, since the affidavit contradicted an earlier one and raised issues of credibility because of her alleged bias in seeing her employer prevail.[13] The Bank submitted two affidavits: one on November 16, 1999, which it attached to its reply to Jones' motion to dismiss; and another on April 11, 2001, which it attached to its motion for summary judgment. The November 16 affidavit states:
 I am custodian of the records for Security National Bank Trust Company's loan with Debtor, Titus L. Jones, which records are routinely kept as a part of Security National Bank Trust Company's business and maintained accurately in accordance with a custom or routine. The records are compiled from data transmitted by a person with knowledge of the facts recorded.
(Emphasis added.)
The affidavit of April 11, 2000 states:
 I have been in direct supervision of all payments received in respect to the mortgage loan which is the subject of this present foreclosure action, and have custody of the books and records of Security National Bank and Trust Company.
(Emphasis added.)
Jones argues that Donaldson's affidavits contradict each other because the first suggests that an unnamed person has knowledge of the facts, while the second suggests that Donaldson is the party with the knowledge of facts relating to this account. Jones contends that this alleged contradiction raises a credibility issue. We disagree. In our view, the emphasized portions of the affidavits are not in conflict. Besides the fact that Donaldson might, herself, have been the "person with knowledge" referred to in the first affidavit, there is the additional possibility that two or more persons, including Donaldson, may have had knowledge of the facts.
As for Jones' claim that Donaldson's alleged bias creates a genuine issue of material fact, conclusory assertions, standing alone, by Jones that Donaldson's affidavits may be false do not create a genuine issue of material fact preventing summary judgment.[14] If an affiant's association with a party moving for summary judgment were sufficient, in and of itself, to create a genuine issue of material fact with respect to any matters averred by the affiant, the utility of Civ. R. 56 would be seriously undermined. In our view, there must be some greater reason to disbelieve matters averred in an affidavit offered in support of a motion for summary judgment before a genuine issue of material fact can be said to exist.
Nor does Jones' counterclaim, which alleges the Bank removed money from his savings account in excess of the loan balance, create a genuine issue of material fact. To support this claim, Jones merely attached to his memorandum opposing summary judgment an incomplete copy of a bank statement reflecting a zero balance in his closed savings account. When viewed in a light most favorable to Jones, a bank statement reflecting a zero balance on a closed account fails to demonstrate that the Bank deducted amounts from his savings account to pay the loan balance. The balance in Jones' savings account may have been reduced to zero for reasons having nothing to do with the loan. Alternatively, the moneys in his savings account may have been applied to the outstanding loan balance (the note would seem to permit this), without, however, having been sufficient to have repaid the loan in full.
We conclude that the evidence Jones submitted is not sufficient to show that a genuine issue of material fact exists on either the Bank's claim or his counterclaim. We will not consider documents Jones attached to his appellate brief in an attempt to support his motion for summary judgment because "[i]t is well established that `[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of new matter.'"[15]
The trial court did not err in rendering summary judgment. Jones' second "fourth" assignment of error and his eighth assignment of error are overruled.
 VI
Jones' sixth and seventh assignments of error are also addressed together, since each relate to the trial court's alleged error in violating Jones' constitutional rights and his rights under certain civil rights acts by rendering summary judgment against him. For his sixth assignment of error, Jones argues:
 THE JUDGE ABUSED HIS DISCRETION WITH PROCEEDING WITH SUMMARY JUDGEMENT [sic] WHEN THE DEFENDANT HAD ALREADY GIVEN NOTICE THROUGH MOTION OF JURY DEMAND
Jones' seventh assignment of error states:
 THE COURT ERROR [sic] IN NOT ALLOWING DEFENDANT-APPELLANT A RIGHT TO CONFRONTATION
Jones argues that by rendering summary judgment against him on the note and mortgage he gave to the Bank, the trial court managed the somewhat remarkable achievement of violating his rights under the First, Fourth, Fifth, Sixth, Seventh, Thirteenth and Fourteenth Amendments to the Constitution of the United States, as well as his rights under the Civil Rights Acts of 1866 and 1871. As to Jones' Seventh and Fourteenth Amendment claims, these arguments clearly are without merit. A summary judgment properly rendered under the civil rule pertaining to summary judgments does not implicate the right to a jury trial.[16] As to Jones' other allegations, he failed to identify, and we have failed to discover, any case law suggesting that a proper award of summary judgment under the applicable civil rule violates an individual's First, Fourth, Fifth, Sixth, or Thirteenth Amendment rights. Nor did he cite, nor have we found, any authority for the proposition that a summary judgment properly rendered under the applicable civil rule violates the Civil Rights Acts of 1866 or 1871.
Jones' sixth and seventh assignments of error are overruled.
 VI
All of Jones' assignments of errors having been overruled, the judgment of the trial court is Affirmed.
 ________ FAIN, J.
BROGAN and YOUNG, JJ., concur.
[1] Chef Italiano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86,541 N.E.2d 64, syllabus.
[2] Cf. State ex rel. Wright v. Ohio Adult Parole Auth. (1996),75 Ohio St.3d 82, 84-87, 661 N.E.2d 728, 731-32 (court of appeal's failure to include Civ.R. 54(B) language in entry did not preclude review of judgment under R.C. 2505.02 when the circumstances demonstrated the court explicitly resolved appellant's first claim and implicitly resolved his second one).
[3] Carla Council v. Wilson (May 17, 2001), Cuyahoga App. No. 78083, unreported.
[4] Akron-Canton Regional Airport Auth. v. Swinehart (1980),62 Ohio St.2d 403, 405, 406 N.E.2d 811, 813-14.
[5] State v. Jones (Oct. 16, 2000), Warren App. No. CA2000-02-015, unreported, at 2.
[6] Cf. Sanborn v. Dean (Mar. 31, 1993), Geauga App. No. 92-6-1691, unreported (defendant may fail to show insufficiency of service even though he received a copy of the wrong complaint, not once, but twice).
[7] North American Sec. Solutions, Inc. v. Brooks (Jan. 26, 2001), Montgomery App. No. 18465, unreported, citing Meyers v. First Nat'l Bankof Cincinnati (1981), 3 Ohio App.3d 209, 210, 444 N.E.2d 412, syllabus.
[8] Clark Cty. Solid Waste Mgt. Dist. v. Danis Clarkco Landfill Co. (1996), 109 Ohio App.3d 19, 36, 671 N.E.2d 1034, 1045 (internal citations omitted).
[9] Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588, 641 N.E.2d 265, 271.
[10] Dresher v. Burt (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264.
[11] Id. at 294, 662 N.E.2d at 274.
[12] R.C. 2329.661; see, also, Markle v. Wayne Savings Loan Co. (June 29, 1999), Ashland App. No. 98-COA-01274, unreported.
[13] See Killilea v. Sears, Roebuck Co. (1985), 27 Ohio App.3d 163,168, 499 N.E.2d 1291, 1296.
[14] Talley v. WHIO TV-7 (1998), 131 Ohio App.3d 164, 169, 722 N.E.2d 103,106 (appellant's statements that affidavits of reporters employed by adverse party were false did not create a genuine issue of material fact to preclude summary judgment for employer stations).
[15] RR Plastics, Inc., supra, quoting State v. Ishmail (1978),54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500, paragraph one of the syllabus.
[16] Tschantz v. Ferguson (1994), 97 Ohio App.3d 693, 713, 647 N.E.2d 507, citing Houk v. Ross (1973), 34 Ohio St.2d 77, 83-84, 63 O.O.2d 119, 122-123, 296 N.E.2d 266, 270-271 (an individual's right to trial by jury under the fourteenth amendment is not abridged by the proper grant of summary judgment); Herndon v. Henderson (Dec. 7, 2000), 6th Cir. No. 00-3475, unreported, citing Fidelity Deposit Co. v. United States
(1902), 187 U.S. 315, 319, 23 S.Ct. 120 (resolution of a case on a motion for summary judgment does not violate the seventh amendment).